**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FLOYD THOMAS RUPP,

      Petitioner,

v.                                                                  Case No. 3:17-cv-1101-J-32PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, AND FLORIDA
ATTORNEY GENERAL,

      Respondents.

_____

**ORDER**

**I.     Status**

Petitioner, Floyd Thomas Rupp, an inmate of the Florida penal system,

initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody. Doc. 1. He is proceeding on an

Amended Petition. Doc. 8. Petitioner challenges a state court (Duval County,

Florida) judgment of conviction for which he is serving a life term of

incarceration. Id. at 1-2. Respondents assert this action is untimely filed and

request dismissal of this case with prejudice. See Doc. 22.[1] After Respondents

moved to dismiss, Petitioner filed a motion to amend his Amended Petition,

asserting an amendment is necessary to add a claim based on newly discovered

---

[1] Attached to the Response are several exhibits.  The Court cites the exhibits as
"Resp. Ex."

evidence. Doc. 25. Because Respondents raised a limitations defense, the Court deferred ruling on the motion for leave to amend and directed Petitioner to file a reply to Respondents' Motion to Dismiss. Doc. 26. Petitioner replied, see Doc. 27, and thus, the Motion to Dismiss is ripe for review.

## II.    One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III.   Analysis

On September 3, 2013, a jury found Petitioner guilty of two counts of capital sexual battery (counts one and two), two counts of sexual battery (counts three and four), and one count of lewd and lascivious molestation (count five). Resp. Ex. A at 144-48. On October 9, 2013, the trial court adjudicated Petitioner as a sexual predator and sentenced him to a life term of incarceration on counts one, two, and five, and a thirty-year term on counts three and four. Id. at 184. Petitioner, with help from appellate counsel, sought a direct appeal, and on October 2, 2014, the First District Court of Appeal per curiam affirmed his convictions without a written opinion. Resp. Ex. F. Petitioner filed a motion for written opinion and clarification, Resp. Ex. G, which the First DCA denied on

3

November 19, 2014, Resp. Ex. H. Petitioner's judgment and sentence became

final 90 days later on Tuesday, February 17, 2015. See Clay v. United States,

537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003)

("According to rules of the Supreme Court, a petition for certiorari must be filed

within 90 days of the appellate court's entry of judgment on the appeal or, if a

motion for rehearing is timely filed, within 90 days of the appellate court's

denial of that motion." (citing Supreme Court Rule 13.3)). Petitioner's federal

one-year statute of limitations began to run the next day, February 18, 2015,

and expired one year later on February 18, 2016, without Petitioner filing a

motion for postconviction relief that would toll the one-year period.

After the expiration of his federal limitations period, on July 6, 2016,

Petitioner filed with the state court a Florida Rule of Criminal Procedure

3.800(a) motion to correct illegal sentence, Resp. Ex. J at 1-5, and on September

20, 2016, a Rule 3.850 motion, Resp. Ex. N at 1-109. Because there was no time

left to toll, however, Petitioner's state court motions for postconviction relief did

not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d

1196, 1204 (11th Cir. 2004) (stating where a state prisoner files postconviction

motions in state court after the AEDPA limitations period has expired, those

filings cannot toll the limitations period because "once a deadline has expired,

there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.

2000) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court

4

petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Thus, the Court finds that this action, filed on September 25, 2017, is untimely filed.

## IV.    Equitable Tolling

In his Reply, Petitioner concedes that this action is untimely, but asks the Court to overlook this procedural bar because his failure to meet the one-year deadline was "outside his control." Doc. 27 at 1. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)). Equitable tolling is an extraordinary remedy that is "typically applied sparingly." Thomas v. Att'y Gen.

of Fla., No. 3:03-cv-237-J-32PDB, 2018 WL 733631, at *15 (M.D. Fla. Feb. 6, 2018) (quoting Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009)).

Petitioner contends he is entitled to equitable tolling because Gerald S. Bettman, Esquire, the attorney who represented Petitioner during trial and his direct appeal, did not notify Petitioner that the First DCA issued its opinion affirming his judgment and conviction until after the expiration of his federal one-year limitations period. Doc. 27 at 2. According to Petitioner, while his direct appeal was pending, Mr. Bettman was also representing Petitioner in a dissolution of marriage proceeding, and throughout his representation, Petitioner "inquired about the direct appeal on numerous occasions." Id. He explains that on September 9, 2014, Mr. Bettman advised Petitioner that he would notify Petitioner when the First DCA issued its ruling. Id. Petitioner asserts, however, that when the First DCA rendered its mandate on December 5, 2014, he "was never notified by legal call from Mr. Bettman nor was [Petitioner] sent legal correspondence from Mr. Bettman or the 1st DCA notifying him that his appeal had been denied or that a mandate had been issued." Id. In support of this allegation, Petitioner attaches two prison mail logs from 2014 showing that he only received two correspondences from Mr. Bettman – one dated February 21, 2014, and a second dated August 18, 2014. Doc. 27-1 at 2-3.

6

According to Petitioner, he finally learned about the First DCA's decision "in late June of 2016," when Mr. Bettman contacted Petitioner regarding other legal matters. Doc. 27 at 2. During that 2016 conversation, Petitioner claims he asked Mr. Bettman about the status of his direct appeal, and "Mr. Bettman informed [Petitioner] that not only had his direct appeal been denied but that it had also been denied over a year [prior]." Id. at 2-3. Petitioner argues it was Mr. Bettman's duty to promptly inform Petitioner about the First DCA's decision and Petitioner "should not be held responsible for Mr. Bettman's incompetence as [Petitioner] had no control over Mr. Bettman['s] actions or his failure to inform [Petitioner] of [the] denial." Id. at 3. According to Petitioner, Mr. Bettman's ineffectiveness "caused [Petitioner] to procedurally default on the AEDPA one year time limit." Id. at 3. He contends that he has "prove[n] diligence in that he inquired multiple times about his appeal and after learning of this denial he promptly filed" his Rule 3.800(a) motion and Rule 3.850 motion. Id. at 5. However, according to Petitioner, due to Mr. Bettman's ineffectiveness, he did not file his postconviction motions in time to toll his federal one-year limitations period. Id.

In consideration of the limited record before the Court, on December 10, 2020, pursuant to Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court requested Mr. Bettman to submit an affidavit regarding Petitioner's allegations. See Doc. 28. Mr. Bettman submitted

7

his affidavit on January 8, 2021, attesting that he does not remember when he first notified Petitioner about the First DCA's decision, but he remembers that he notified Petitioner by telephone. Doc. 29. Mr. Bettman explains that Petitioner directly contacted him by telephone and "inquired about [the] disposition []or the status of his direct appeal on a regular basis, until [he] advised [Petitioner] that all appeals had been denied." Id. at 1. Mr. Bettman further maintains he notified Petitioner about the conclusion of the direct appeal through family members, with whom Mr. Bettman also had regular contact. Id. at 2.

"A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." Drew v. Dep't of Corr., 297 F.3d 1278, 1288 (11th Cir. 2002). When there is such delay, the petitioner's "efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate." San Martin v. McNeil, 633 F.3d 1257, 1269 (11th Cir. 2011).

Here, Petitioner claims his efforts and counsel's representations to him are like those outlined in Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002). Doc. 27 at 3. In Knight, a pro se prisoner was waiting until his state postconviction proceedings were concluded before filing his federal habeas

8

petition. Knight, 292 F.3d at 709. Knight contacted the state clerk of court about

the status of his postconviction motion and the clerk advised Knight that it

would notify him when the court entered an order. Id. at 710. When the court

issued its order, however, the clerk inadvertently sent notice to the wrong

person. Id. at 710-11. Sixteen months after Knight first spoke to the clerk, and

after the expiration of his federal one-year limitations period, Knight contacted

the clerk a second time and was advised that his postconviction motion had been

denied several months earlier. Id. The Eleventh Circuit found Knight was

entitled to have his federal one-year equitably tolled until the date he received

notice that the state court had denied postconviction relief despite his sixteen-

month delay in inquiring a second time. Id. The court explained it was

"understandable" that Knight did not make any earlier inquires because the

clerk assured him that it would notify him as soon as a decision was made and

until the clerk responded, Knight had no way of knowing about the disposition

of his case. Id. However, the court clarified that "not in every case will a prisoner

be entitled to equitable tolling until he receives notice . . . . [rather] [e]ach case

turns on its own facts." Id.

The facts of Petitioner's case are distinguishable from those in Knight.

Unlike Knight who depended on a state clerk of court to provide notice,

Petitioner claims his appellate attorney's negligence is the "extraordinary

circumstance" justifying equitable tolling. However, "attorney negligence, even

gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship, such as may have occurred in Holland [v. Florida, 560 U.S. 631 (2010)], or some other professional misconduct or some other extraordinary circumstance is required." Clemons v. Comm'r, Ala. Dep't of Corr., 967 F.3d 1231, 1242 (11th Cir. 2020) (quoting Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1227 (11th Cir. 2017)). For example, in Holland, the Court found collateral counsel's conduct "amounted to more" than the "garden variety" of negligence because not only did counsel fail to inform Holland, a death row inmate, that the Florida Supreme Court affirmed the denial of his state postconviction motion "despite Holland's many pleas for that information," but counsel also: (1) ignored Holland's many letters and requests to file a federal habeas petition on time; (2) failed to do the research necessary to determine the proper filing date for his federal habeas petition; (3) failed to communicate with Holland during the two-and-one-half years that his postconviction motion was pending "despite various pleas from Holland that [counsel] respond to his letters"; and (4) Holland had unsuccessfully tried to discharge his attorney due to "a complete breakdown in communication." Holland, 560 U.S. at 652; see also Cadet, 853 F.3d at 1216.

Petitioner does not allege, and there is no evidence to suggest, that counsel's conduct amounted to the type of "abandonment" contemplated by

Holland and Cadet. Petitioner does not argue that counsel failed to respond to any inquiry or request about his direct appeal; rather, Petitioner claims the opposite. He states counsel responded to Petitioner's initial inquiry about the status of his direct appeal on September 9, 2014, by advising he would notify Petitioner as soon as a decision was rendered. Thereafter, Petitioner suggests counsel continued to communicate with him and represented Petitioner in unrelated legal proceedings, and Petitioner maintains that counsel initiated contact with him in June 2016.[2] Doc. 27 at 2. Further, when Petitioner asked about the status of his direct appeal again during that June 2016 conversation, Petitioner admits that counsel immediately advised him of its conclusion. See, e.g., Pollock v. Sec'y, Dep't of Corr., 664 F. App'x 770, 773 (11th Cir. 2016) (noting counsel's "quick response to [petitioner's] inquiry supports [that] the circumstances were not out of [petitioner's] control, if only he had inquired sooner."). However, Mr. Bettman's affidavit indicates that he advised Petitioner about the direct appeal prior to June 2016. According to Mr. Bettman, Petitioner directly called him and inquired about the status of his direct appeal "on a regular basis, until [he] advised [Petitioner] that all appeals had been denied." Doc. 29 at 1. Mr. Bettman also asserts he had regular communication with Petitioner's family members, who would have likely relayed any

---

[2] Petitioner's motion for leave to file a second amended petition, Doc. 25, also indicates counsel was still communicating with Petitioner in August 2018.

11

information to Petitioner. Id. at 2. In any event, taking Petitioner's assertions as true, counsel's alleged delay in notifying Petitioner about the outcome of his direct appeal amounts to nothing more than attorney negligence, which cannot support equitable tolling.

Further, Petitioner's argument that the February 21, 2014, and August 18, 2014, mail logs show counsel did not timely provide notice is unpersuasive. See Doc. 27-1 at 2-3. First, the alleged September 9, 2014, communication, see Doc. 27 at 7, is not documented on these provided mail logs, and thus, the logs apparently do not reflect all communication between Petitioner and counsel. Second, these mail logs show only correspondence that Petitioner received. See Doc. 27-1 at 1-3. He provides no evidence of the correspondence that he allegedly sent to counsel. Further, and likely of more import, Mr. Bettman explains in his affidavit that all communications about the First DCA's decision occurred when Petitioner called him directly or when Mr. Bettman spoke with Petitioner's family members. Doc. 29 at 2. Those telephone conversations and family correspondence would not be reflected in these prison mail logs on which Petitioner relies. Under these circumstances, the Court finds Petitioner is not entitled to equitable tolling. Nor does he assert actual innocence as a gateway to avoid enforcement of the one-year limitations period. See McQuiggin v.

12

<u>Perkins</u>, 133 S. Ct. 1924, 1928 (2013). As such, this action is due to be dismissed.[3]

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      This case is **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

---

[3] Because the Court finds that this action is untimely and due to be dismissed, Petitioner's motion to amend (Doc. 25) is denied.

[4] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of January, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7
C:     Floyd Thomas Rupp, #J51118
         Anne Catherine Conley, Esq.

14